[Crim. No. 38346. Second Dist., Div. Four. June 22, 1971.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ANTHONY BOWMAN, Real Party in Interest.

**COUNSEL**

Joseph P. Busch, Jr., District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Richard S. Buckley, Public Defender, James L. McCormick, Harold E. Shabo, Robert Levy and Edward Van Gelder, Deputy Public Defenders, for Real Party in Interest.

**OPINION**

**KINGSLEY, J.**—Defendant was charged, in two counts, with assault on a peace officer, in violation of section 242 of the Penal Code, and with possession of a deadly weapon by an ex-convict, in violation of section 12021 of the Penal Code. He duly moved, pursuant to section 1538.5 of the Penal Code, to suppress as evidence against him an automatic weapon seized at the time of his arrest. After a hearing, the motion was granted. The People seek a writ of mandate directing the trial court to vacate that order and enter an order denying the motion. We issued our alternative writ; the matter has been briefed and argued. For the reasons set forth below, we grant the petition for a peremptory writ.

In view of the issue as presented to us, we need not recite the evidence in

detail. Police officers were advised that a tall Negro man, wearing striped bell bottom trousers and a long leather jacket had just purchased a gun at a Main Street pawn shop and was carrying it, concealed, in that vicinity. They drove down Main Street and saw defendant, dressed as described, standing in front of a barber shop. One officer testified that, from his vantage point on the police vehicle,[1] he saw a box of bullets in defendant's jacket pocket. The officers alighted from the vehicle, approached defendant and removed the box of bullets. The officer testified that the jacket was unbuttoned and that he saw the butt of a pistol in defendant's belt. He reached in and seized the weapon.[2] The evidence at the 1538.5 hearing cast substantial doubt on the credibility of that story.[3] The trial judge discussed with counsel, at some length, his doubts as to the accuracy of both versions. Ultimately, and after taking time to consider his decision, he granted the motion to suppress the weapon, saying:

"THE COURT: I find that the preponderance of evidence discloses that the officer observed the automatic at a time when he had not yet placed—when he had not yet detained the defendant or placed him in custody, and that he seized it at a time when he had not yet commenced a search of the defendant's person, and that he seized it upon seeing it.

"But I entertain a reasonable doubt as to whether that is the fact, and I would grant the motion. The motion is granted."

". . . . . . . . . . . . . . . .

"THE COURT: If the measure is—the proper measure is the preponderance of the evidence, the motion should not be granted. If the proper measure is reasonable doubt, the motion should be granted."

 Since the officers had no warrant, the burden was on the People to justify their conduct. It is conceded that the information received by the officers was not sufficient to have justified an arrest of defendant, but that it

---

[1]The officers were in a so-called "drunk" wagon, which placed them three or four feet higher than an ordinary patrol car.

[2]Counsel for defendant suggests that, since the arrest was for a violation of section 12025 (concealed weapon) the officer's story, if accepted, showed that the weapon was not concealed as a matter of law. That point was never made in the court below; even if available in such a proceeding, it cannot now be raised here.

[3]In a courtroom demonstration, the officer could not see the box of bullets as he claimed to have done. Acording to the officers, they approached defendant and accosted him without the usual preliminary pat down search. Defendant and his brother testified that his coat was buttoned and that the officer grabbed the box of bullets with one hand and ripped open his coat with the other, reaching directly for the gun. Some physical evidence supported that story.

was sufficient, when coupled with his dress and the area in which he was seen, to justify accosting him for further investigation. Under those circumstances, a cursory pat down of his person would have been lawful and, had there been such a search with the discovery of the gun, the officers, for their own protection, could have seized it.

But, absent a pat down, the right to seize the weapon turns on the fact— if it be a fact—that the officers had earlier seen the box of bullets and the gun butt. The record of the 1538.5 hearing shows that the trial court entertained substantial doubt as to the truth of the officer's version, concluding with the remarks and ruling above quoted. On this record, we must determine whether the court used the correct standard of proof. We conclude that it did not.

We point out, first, that, although the discussion between court and counsel took a broad sweep, the ultimate ruling, quoted above, turned not on the court's view as to the reasonableness of official conduct on agreed or admitted facts, but on whether there had actually existed the facts on which the officer purported to rely in forming his belief that defendant was armed. In other words, the narrow issue before us is whether a trial judge, in ruling on a motion to suppress evidence, made pursuant to section 1538.5 of the Penal Code, must believe the factual testimony on behalf of the People beyond a reasonable doubt, or whether he may deny the motion because he believes that testimony more probably true than false.[4]

Neither party has cited us to any authority directly deciding the issue thus presented. The People argue, and the real party in interest concedes, that we deal with a so-called "preliminary fact." The People advance from that position by citing section 115 of the Evidence Code, which provides that "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." They then cite the Evidence Code Manual, published by the California Continuing Education of the Bar, to the effect that the reasonable doubt standard applies only to the issue of guilt and that "[o]n other issues in a criminal case, the burden of proof requires proof only by a preponderance of the evidence." (Evidence Code Manual (Cont. Ed. Bar 1966), 410.) They refer, also, to various decisions in which the appellate courts have referred to "inferences" and to situations in which "it was more likely than not" that probable cause to arrest, or to search, existed.

The cases cited are not helpful, since they did not deal with the issue be-

---

[4]"The phrase 'preponderance of evidence' is usually defined in terms of probability of truth; e.g., 'such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability of truth lies therein.'" (Witkin, Cal. Evidence (2d ed. 1966), p. 189, § 208, citing BAJI (5th ed.) § 2.60.)

fore us, but rather with whether a finding (made without express reference to a standard of proof) was, or was not supported by the record. But a finder of fact may be convinced to the highest standard by inferences it draws from the evidence. And, where the issue is whether an officer, acting on uncontradicted factual data, had reasonably drawn a conclusion therefrom, the matter of standard of proof is not in issue.

The real party in interest points out: (1) that Evidence Code, section 115, by its terms, requires a higher standard than preponderance of the evidence "where otherwise provided by law," and that the official comment to that section includes "decisional law" as one form of the "law" referred to in the statute. He points out, also, that the Evidence Code Manual is in error in at least one instance of proof of a preliminary fact. In *People* v. *Stroud* (1969) 273 Cal.App.2d 670 [78 Cal.Rptr. 270] (hg. den.), the court said, at pages 677-678:

"From a digest of the cases it appears that the degree of proof required depends upon whom the burden of proof rests in the particular jurisdiction. Where the defendant has the burden of showing that a confession produced by the prosecution is not voluntary, the degree of proof is by a preponderance of the evidence. Where the People have the burden of proving that a confession is voluntary, the degree of proof is beyond a reasonable doubt. We find no case explicitly defining the degree of proof required in this state, but the burden of proving that a questioned confession meets the test of admissibility has been placed upon the prosecution. (*People* v. *Davis*, 66 Cal.2d 175, 180-181 [57 Cal.Rptr. 130, 424 P.2d 682].) It follows, we think, that the degree of proof required to meet that burden is proof beyond a reasonable doubt. We reach this conclusion after a review of reasons given by the United States Supreme Court in *Jackson* v. *Denno, supra* [378 U.S. 368 (12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205)], for requiring a trial judge to determine voluntariness of a confession out of the presence of the jury. In the eyes of the jurors a confession is prima facie evidence of a defendant's guilt, and once they hear it the defendant is placed in the well nigh impossible position of overcoming this prima facie evidence of his guilt which emanated from his own lips. Hence to hold that the trial judge's ruling is to be grounded upon anything less than proof beyond a reasonable doubt would seem to be anomalous in a legal system that requires the People to prove a defendant's guilt beyond a reasonable doubt."

The real party in interest argues that the same reasoning applies to the issue before us. As he points out, and as we know from the many cases before us involving section 1538.5 motions, the determination of that motion often decides the question of guilt or innocence. As subparagraph (7) of subdivision (a) of section 1238 recognizes, the grant of a motion to sup-

press may result in an order dismissing the case; and subdivision (m) of section 1538.5 permits a defendant whose motion was denied to raise that denial on appeal, even after a plea of guilty.[5]

The *effect* of denying a motion to suppress evidence is likely to be the same as the *effect* of admitting, as voluntary, a confession—to wit, a conviction. But many trial court rulings on the admission of evidence will be reflected in the ultimate verdict. The very concept of *prejudicial* error implies that fact. The significance of the admission of a confession is that the confession admits the prosecution's entire case, whereas the ruling on other preliminary facts goes only to the collateral issue of whether, for reasons of public policy, the People may prove a known guilt[6] by certain evidence.

We conclude that the distinction is material. We can see no valid reason why a rule not designed to improve the ascertainment of truth, but designed to enforce on police and prosecutors a proper course of conduct need be implemented by requiring a standard of proof more restrictive than that ordinarily applied to the determination of other preliminary facts.

Let a peremptory writ of mandate issue, directing the superior court; (*a*) to vacate its order granting defendant's motion to suppress evidence, heretofore made in its case number A-268,176; (*b*) to deny that motion; and (*c*) thereafter to proceed according to law.

Files, P. J., and Jefferson, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied August 18, 1971.

---

[5]Thus creating a statutory exception to the ordinary rule that an appeal after a plea of guilty raises no issues as to the guilt of the appellant or as to the conduct of the trial.

[6]The reason that the denial of a section 1538.5 motion normally results in a plea or finding of guilt is that the defendant is, in fact, guilty if the People can lawfully prove the guilt.