I wrote the majority opinion and feel that its results are compelled by controlling authority. However, I am deeply troubled by it. Correct it may be; right it is not. Ominous consequences necessarily flow from it which are highly detrimental to society and of precious little benefit to the mentally retarded. *Page 248 
As I have indicated, the legislative branch of government has developed a series of enlightened programs for the care and treatment of children and the mentally handicapped. The holding in this case is merely one more example of a trend by which this and similar programs are being cemented into the rigid and formalistic procedures applicable to criminal proceedings but of doubtful validity in proceedings such as this. On the simple premise that each of the programs has a potential of a "loss of liberty" similar rulings have made a shambles of the juvenile court and placed the treatment programs in M.D.S.O. and narcotic addiction proceedings in serious disarray.
The vice of this ruling is that, when carried to its logical and inevitable conclusion, it may become difficult if not impossible to administer the legislative scheme for the treatment of the mentally retarded who have dangerous tendencies.
When a Jackson v. Denno hearing is held regarding the statements of the alleged mentally retarded person, the court is under a mandate to exclude any such statement unless the proof is beyond a reasonable doubt that the statement is free and voluntary. (People v. Jimenez, 21 Cal.3d 595 [147 Cal.Rptr. 172,580 P.2d 672].) What are the practical consequences of such a holding?
If a person lacks the mental capacity to understand what he is doing, his confession or admission is inadmissible. (Witkin, Cal. Evidence (2d ed.) p. 437.)[1] In People v. MacPherson,2 Cal.3d 109, 115 [84 Cal.Rptr. 129, 465 P.2d 17], the court held that a confession (or an admission) must be the product of a "rational intellect" and a "free will." If a person does not have the mental capacity to refrain from making a statement, that statement is obviously not the product of a rational intellect or a free will. When dealing with a mentally retarded person, it is almost impossible to conclude that any statement is the result of a rational intellect and a free will. Thus, though in Emmett's case there is no evidence of force, duress, threats, promises of immunity or other of the traditional indicia of a coerced admission or confession, the officers (and the doctors and members of the family) certainly cajoled him into taking. It is highly questionable that a mentally retarded person would talk about his incendiary proclivities with a "rational intellect" and a "free will." *Page 249 
In this case the request for a Jackson v. Denno hearing was made only in regard to the statements to the officers. But what about the statements Emmett made to others? As to the examining doctors, we run smack up against the application of the criminal law to statements made to court-appointed psychiatrists. (In reSpencer, 63 Cal.2d 400 [46 Cal.Rptr. 753, 406 P.2d 33];People v. Price, 63 Cal.2d 370 [46 Cal.Rptr. 775,406 P.2d 65].) Thus, under this ruling the doctors will be proscribed from giving to the jury any conversation they might have with the person who lacks the rational intellect and the free will to make a voluntary statement. Ridiculous as it may seem we find the same problems with Emmett's statements to his grandmother and to his cousin. An involuntary confession or admission is inadmissible when made to a nonstate agent. (People v. Haydel, 12 Cal.3d 190
[115 Cal.Rptr. 394, 524 P.2d 866].)
Thus, under the ruling we have made today, if proper objection is made, there is no way that the jury is ever going to find out that Emmett is an arsonist unless he is caught in the act. The statements of Emmett or any other mentally retarded person in regard to his dangerousness inevitably concern criminality. Therefore, these statements may not be presented to the jury. The only time the jury is going to have any information concerning the dangerous proclivities of a mentally retarded person is in the case where actual eyewitness evidence may be presented concerning those dangerous tendencies as in such crimes as assault.
In my humble opinion the Supreme Court should take another hard look at Tyars.
Tyars said that Welfare and Institutions Code sections 6500-6512 ". . . must be deemed essentially civil in nature. . . . The sole state interest, legislatively expressed, is the custodial care, diagnosis, treatment, and protection of persons who are unable to take care of themselves and who for their own well being and the safety of others cannot be left adrift in the community. The commitment may not reasonably be deemed punishment either in its design or purpose. It is not analogous to criminal proceedings." (Cramer v. Tyars, supra, 23 Cal.3d 131, 137.)
I am concerned with the picture of Emmett Shay "adrift in the community" with a pocket full of matches.
McDaniel, J., concurred.
A petition for a rehearing was denied July 3, 1979, and respondent's petition for a hearing by the Supreme Court was denied August 15, 1979.
[1] Here, we are obviously dealing with admissions. One cannot very well confess that he is mentally retarded or that he is dangerous. Nevertheless, statements admitting criminal conduct would, under Cramer v. Tyars, supra, 23 Cal.3d 131, come under the umbrella of the admission-confession concept. *Page 250