[No. B014947. Second Dist., Div. Four. Apr. 10, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
EDDIE LEE BIRDEN, Defendant and Appellant.

1022

**COUNSEL**

Richard D. Rome, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Stephen M. Kaufman and Sharon R. Wooden, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KINGSLEY, Acting P. J.**—The defendant appeals his conviction for one count of murder (Pen. Code, § 187), two counts of attempted robbery (Pen. Code, §§ 211, 664) and one count of conspiracy to commit robbery (Pen. Code, §§ 182, 211). We affirm.

FACTS

Over the Thanksgiving weekend in 1983, the defendant and two other individuals conspired to hold up a card game that they heard was taking place at an apartment in the Nickerson Gardens Housing Project. The apartment in question belonged to the murder victim, Elizabeth George, who was having her family over that weekend to celebrate the holidays. The defendant confessed to the police that he and another man were to approach the front door of the apartment while a third individual, Joe Page, went around to the back with a shotgun.

At about 7 that evening the defendants knocked on the door of the apartment which was answered by Beebe "James" Brewer, Elizabeth George's boyfriend. Brewer testified that the defendants then either asked for someone or stated that this was a holdup. The defendant then pushed Brewer to the floor and held the door open.

Observing all this was Elizabeth George's daughter-in-law, Diane Haughton. When Brewer was pushed to the floor, she ran into the kitchen where Elizabeth George and some other friends and relatives were playing cards. No money was involved in the game. Diane Haughton then told everyone that someone was at the door and had pushed James. Elizabeth George then got up, stormed into the living room and shoved the two would-be holdup men out the door. Grabbing a bottle she used as a vase, Elizabeth George reopened the door, telling the others, "I'm going to see what these mother fuckers trying to bogart my mother fucking house." A heated argument quickly ensued between Elizabeth George and one of the robbers. As she raised the bottle up over her head, Elizabeth George received one shotgun blast under the arm, which killed her. An autopsy showed she had a blood alcohol level of .08.

I

Following his arrest, the defendant confessed to the crime, but denied that he fired the fatal blast from the shotgun. ▮ On appeal, the defendant claims that his confession was obtained involuntarily in that the interrogating officer questioned him after he stated that he did not want to talk to the police, that the officer told him it would make things easier for

him if he talked, and he would not have to serve any time, and that the officer had him sign the confession without reading it to him and which he could not read himself. The interrogating officer denied that any of these things had occurred.

■ ""''As a reviewing court it is our duty to examine the uncontradicted facts to determine independently whether the trial court's conclusion of voluntariness was properly found. . . .'"' With respect to conflicting testimony, of course, '. . . we accept that version of events which is most favorable to the People, to the extent that it is supported by the record.'"' (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672].)

■ There is no evidence here as to the circumstances of the defendant's confession other than the conflicting testimony of the defendant and the interrogating officer. Whether the confession was voluntary is simply a question of whose version one chooses to accept. If the events had been as defendant said they were, then the defendant is certainly entitled to have his confession excluded as involuntary. Similarly, if one believes the interrogating officer, there is no question but that the confession was voluntary. The trial court's conclusion that the confession was given voluntarily, therefore, can only be because it accepted the testimony of the interrogating officer over that of the defendant. This it had every right to do.

■ The defendant complains, however, that since no recording was made of the interrogation session (although the room was wired for sound), the People have made it impossible for him to substantiate his version of the events. Therefore, defendant argues, the burden of proof should be shifted to the People. We can find no rule of evidence nor constitutional requirement, however, that a suspect's interrogation must be recorded before the testimony of the police can be given credence. ■ ■ Following the holding in *Jimenez,* we are compelled to adopt that version of events most favorable to the People. Accordingly, we conclude that the trial court did not err in ruling the defendant's confession voluntary.

## II

The defendant additionally contends that he is not guilty of felony murder on two grounds: (1) the attempted robbery had been abandoned before the murder occurred; and, (2) that there was no causal connection between the planned robbery and the murder. These contentions are without merit.

■ A homicide need not occur while the underlying felony is in progress to trigger operation of the felony-murder rule. There is no requirement that the homicide take place while committing the felony, or while engaged in the felony, or that the killing be part of the felony. It is sufficient that the

homicide be related to the felony and have resulted as a natural and probable consequence thereof. (*People* v. *Chavez* (1951) 37 Cal.2d 656, 669-680 [234 P.2d 632]; *People* v. *Morrison* (1980) 110 Cal.App.3d 476, 484 [168 Cal.Rptr. 190]; *People* v. *Taylor* (1980) 112 Cal.App.3d 348, 358 [169 Cal.Rptr. 290].) No technical inquiry concerning whether there has been a completion, abandonment or desistance of the felony prior to the commission of the homicide is necessary. (*People* v. *Chavez, supra,* at pp. 669-670.) Thus, even if there was convincing evidence that the defendant had abandoned the robbery—which there is not—he would still be liable for the murder if it resulted as a natural consequence of the attempted crime. **(5)** The defendant, however, contends that the murder was not a natural consequence of the robbery in that it was the result of an intoxicated victim attacking the robbers after they had fled and thus not causally related to the crime. This contention, however, does not change the status of the crime from a felony-murder. It is to be expected that on occasion, as was the case here, a robbery victim may not just simply submit to his assailants but instead, may attempt to fight or pursue them, as he is lawfully entitled to do. A murder under these circumstances is no less a natural consequence of the robbery. In retrospect, it is tragically predictable. The defendant is not excused, therefore, because his victim resisted his efforts to perpetrate or flee from the crime.

■  The defendant also argues that his felony-murder conviction is erroneous as the robbery was an integral part of the homicide and not an independent crime. This contention seems to arise from the defendant's misapplication of the so-called "merger doctrine." When a felony is committed merely to further an intended murder, the commission of the felony does not trigger the application of the felony-murder rule. (*People* v. *Ireland* (1969) 70 Cal.2d 522, 539-540 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323].) Thus, where a man breaks into the house of his intended murder victim in order to assault him—thereby committing a burglary as well as a homicide—he is not guilty of felony-murder. (See *People* v. *Sears* (1970) 2 Cal.3d 180, 187-188 [84 Cal.Rptr. 711, 465 P.2d 847].) This doctrine can have no application here, however, unless the defendant intended to murder Elizabeth George and the attempted robbery was somehow designed to further that end. This is hardly credible, probably legally impossible, and entirely contrary to all the evidence in this case. We therefore cannot accept the contention on appeal.

### III

■  The defendant further contends that he is not guilty of the attempted robbery of Elizabeth George as he never got close enough to her for his acts to go beyond mere preparation. When the defendant first entered the apartment, Elizabeth George was away from the entry in the kitchen. The defendant never got the chance to continue the robbery as Elizabeth George

promptly pushed him out the door. The defendant argues, therefore, that he never committed an overt act necessary to qualify as an attempt to rob her.

We disagree. Unlike the case in many attempted crimes, there is no question here as to what the defendant intended to do. That the defendant intended to rob Elizabeth George and all those present at the card game is apparent from his confession. Thus, this is not a case of having to surmise exactly what crime the defendant intended to commit, but rather simply a question of whether the defendant had taken a sufficient step along the path of that crime. We conclude that he had. The defendant's brief but forcible entry into the victim's apartment is an overt and unequivocal act towards the robbery he intended to commit. There is no way the assault on Beebe Brewer could be mistaken for a permissive entry. This act goes beyond merely preparing for the crime, and clearly indicates that the offense was already in progress. The defendant, therefore, is not entitled to the reversal of his attempted robbery conviction.

## IV

■ The defendant finally contends that he is entitled to the reduction of his conviction to second degree murder under *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697]. We find nothing in the instant case that would justify such an action. None of the mitigating factors present in *Dillon* are to be found here. The defendant here is not particularly immature and has had two prior convictions for robbery and grand theft in less than three years preceding the crime. We cannot say, therefore, that his punishment is disproportionate to his culpability for the offense.

The judgment is affirmed.

McClosky, J., and Shimer, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied July 16, 1986.

---

*Assigned by the Chairperson of the Judicial Council.