Opinion
 

 GARDNER, P. J.
 

 The Issue
 

 In this case we hold that
 
 Miranda
 
 principles are not applicable to proceedings under Welfare and Institutions Code section 6500.1
 
 [1]
 
 (mentally retarded persons who are a danger to themselves or others). However,
 
 *244
 
 we further hold that the trial court must, on appropriate motion, hold a
 
 Jackson
 
 v.
 
 Denno,
 
 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], (Evid. Code, § 405) hearing regarding the voluntariness of statements to the police by the alleged mentally retarded person.
 

 Facts
 

 Emmett Shay is a 30-year-old mentally retarded person with an I.Q. of 57 and the emotional age of a 5- or 6-year-old. Unfortunately, Emmett has incendiary proclivities. He has set at least three fires, two residences and a car—all belonging to people at whom Emmett was angry.
 
 [2]
 
 Finally, he was arrested for arson but when the officers discovered his mental condition, Welfare and Institutions Code section 6500.1 proceedings were instituted. At trial, an officer proposed to testify about a conversation with Emmett in which Emmett told about setting three fires. Counsel had requested a hearing outside the presence of the jury, alleging that the statements were taken in violation of
 
 Miranda
 
 and that they were not voluntary. The trial court ruled that these were civil proceedings, that the safeguards pertaining to criminal proceedings were not applicable and that the statements were admissible. Thereafter, the officer testified to Emmett’s admission of three fires. Each of four doctors testified that Emmett had told him that he had set the fires. So, too, did Emmett’s grandmother and a cousin. Emmett himself testified that he set fires but he said that he would not do it any more. He was found to be mentally retarded, dangerous and committed to a state hospital.
 

 Discussion
 

 The Problem
 

 In criminal proceedings aimed at the deprivation of an individual’s life or liberty for alleged antisocial activity, our historic Anglo-Saxon distrust of the power of the state has, in those jurisdictions with a common law background, resulted in the formulation throughout the centuries of procedures aimed at. curbing the power of the state. In this country, these have, particularly in the last 25 to 30 years, become highly formalized and increasingly complex.
 

 
 *245
 
 On the other hand, in purely civil proceedings in which property or human rights, exclusive of loss of life or liberty, are involved, a more flexible system of factual and legal determinations exists.
 

 Then, since the turn of the century, a new category of laws has emerged which does not fit comfortably into either the civil or criminal field. These have to do with society’s efforts to handle the problems of those who cannot compete in life’s open market—basically children and those with mental and psychological problems. Statutorily, since they are designed for the protection of the child or the person with mental or psychological problems, rules pertaining to civil litigation apply. However, under the guise of protection, the possibility of abuse always exists. Therefore, the courts have intervened in these statutory schemes and have increasingly mandated the trappings of criminal prosecution in these fields. This case falls squarely in this gray area between purely civil and purely criminal proceedings.
 

 Miranda
 

 The basic purpose of
 
 Miranda
 
 is the need to deter improper law enforcement activities.
 
 (In re Martinez,
 
 1 Cal.3d 641, 648 [83 Cal.Rptr. 382, 463 P.2d 734].) We find no need for the deterrent force of the criminal law exclusionary rule promulgated in
 
 Miranda
 
 in mentally retarded commitment proceedings. Unlike narcotic addiction proceedings
 
 (People
 
 v.
 
 Moore,
 
 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800]) and juvenile proceedings
 
 (In re Garth D.,
 
 55 Cal.App.3d 986 [127 Cal.Rptr. 881]), these proceedings have no relationship to the aims and objectives of law enforcement.
 

 Voluntariness and Jackson
 
 v.
 
 Denno
 

 The basis of the rule that only voluntary statements be admitted is twofold, (1) the danger that an involuntary statement not be true, and (2) the danger that an individual may be compelled to incriminate himself. However, in recent years, the former ground has almost disappeared from legal and judicial literature and the “later cases are largely concerned with the protection of personal rights and the elimination of illegal police practices, regardless of the possible or probable truth of the confession.” (Witkin, Cal. Evidence (2d ed. 1966) p. 437.)
 

 As we all know, an enormous judicial library has developed on the subject of the voluntariness of confessions or admissions in criminal
 
 *246
 
 cases. (Witkin, Cal. Evidence (2d ed. 1966) § 475 et seq.; Witkin, Cal. Criminal Procedure (1978 supp.) § 361A et seq.) Prominent in that library is the case of
 
 Jackson
 
 v.
 
 Denno, supra,
 
 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], which held that a voir dire hearing must be held outside the presence of the jury to determine the admissibility of the confession. This has been codified in California in Evidence Code section 405. Here, the court is given the final responsibility for determining the admissibility of confessions or admissions and the court is required to make that determination outside the presence of the jury if the defendant so requests.
 
 (People
 
 v.
 
 Culver,
 
 10 Cal.3d 542, 547-548, fn. 8 [111 Cal.Rptr. 183, 516 P.2d 887].) The proof of voluntariness must be beyond a reasonable doubt.
 
 (People
 
 v.
 
 Jimenez,
 
 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672].)
 

 The Supreme Court of this state has made it clear in
 
 Cramer
 
 v.
 
 Tyars,
 
 23 Cal.3d 131 [151 Cal.Rptr. 653, 588 P.2d 793], that the mentally retarded person is entitled to the full panoply of the criminal law insofar as the issue of the voluntariness of his statement is concerned. Although that case characterized proceedings under Welfare and Institutions Code section 6500.1 as being “essentially civil in nature” and held that a subject of such proceedings could be called as a witness at the commitment hearing, the court advised that the privilege against self-incrimination must be respected in such hearings. The court said: “To the extent that the necessary elements of mental retardation and dangerousness may be established by evidence of criminal conduct,
 
 such evidence must, in its entirety, be elicited from sources other than the individual who is the subject of the commitment proceeding.
 
 In the matter before us the trial court, referring to Tyars, observed that ‘This is not a proceeding in which he could refuse to testify on the grounds that his testimony might tend to incriminate him.’ This was error.”
 
 (Cramer
 
 v.
 
 Tyars, supra,
 
 23 Cal.3d 131, 138; italics added.)
 

 Use of a coerced confession of criminal conduct is proscribed by the privilege against self-incrimination guaranteed by both “the Federal and California Constitutions.”
 
 (People
 
 v.
 
 Jimenez, supra,
 
 21 Cal.3d 595, 605.) The privilege against self-incrimination contained in article I, section 15 of the California Constitution has been construed to provide even greater protection in some respects than the privilege guaranteed by the Fifth Amendment.
 
 (People
 
 v.
 
 Disbrow,
 
 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272].) The
 
 Jackson
 
 v.
 
 Denno
 
 hearing is required by the due process clause of the Fourteenth Amendment “to insure a reliable and clear-cut determination of the voluntariness of the confession, including
 
 *247
 
 the resolution of disputed facts upon which the voluntariness issue may depend.”
 
 {Jackson
 
 v.
 
 Denno, supra,
 
 378 U.S. 368, 391 [12 L.Ed.2d 908, 924].)
 

 Thus, where the commitment of a mentally retarded person depends on proof of criminal conduct, the Supreme Court of this state has ruled that the same due process safeguards designed to insure against use of involuntary confessions or admissions of criminal conduct in a criminal proceeding apply. Obviously, in either case, a finding that the allegations are true can result in involuntary incarceration of the subject. A mentally retarded person determined to be a danger to others faces possible loss of freedom for life as the result of successive recommitments. (See
 
 Conservatorship of Roulet,
 
 23 Cal.3d 219, 224-225 [152 Cal.Rptr. 425, 590 P.2d 1].) The instant case illustrates the shadowy line between a criminal proceeding and a Welfare and Institutions Code section 6500.1 proceeding. Emmett was initially arrested for arson and criminal proceedings were instituted, but apparently upon discovery of his mental retardation, section 6500.1 commitment proceedings were filed. The objective in either case was the commitment of Emmett to a state institution from which he would not be free to leave.
 

 It is our conclusion that under the mandate of
 
 Tyars,
 
 the judge should have held a
 
 Jackson
 
 v.
 
 Denno
 
 hearing as codified in Evidence Code section 405 and the failure to hold such a hearing was error of constitutional proportions requiring the application of the
 
 Chapman
 
 test.
 
 {Chapman
 
 v.
 
 California,
 
 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Inasmuch as the finding of dangerousness was based in part on the testimony of the police officers as to admissions by Emmett that he had set fires, we cannot find beyond a reasonable doubt that this error was harmless.
 

 Judgment reversed.
 

 Tamura, J., and McDaniel, J., concurred.
 

 GARDNER, P. J.
 

 I wrote the majority opinion and feel that its results are compelled by controlling authority. However, I am deeply troubled by it. Correct it may be; right it is not. Ominous consequences necessarily flow from it which are highly detrimental to society and of precious little benefit to the mentally retarded.
 

 
 *248
 
 As I have indicated, the legislative branch of government has developed a series of enlightened programs for the care and treatment of children and the mentally handicapped. The holding in this case is merely one more example of a trend by which this and similar programs are being cemented into the rigid and formalistic procedures applicable to criminal proceedings but of doubtful validity in proceedings such as this. On the simple premise that each of the programs has a potential of a “loss of liberty” similar rulings have made a shambles of the juvenile court and placed the treatment programs in M.D.S.O. and narcotic addiction proceedings in serious disarray.
 

 The vice of this ruling is that, when carried to its logical and inevitable conclusion, it may become difficult if not impossible to administer the legislative scheme for the treatment of the mentally retarded who have dangerous tendencies.
 

 When a
 
 Jackson
 
 v.
 
 Denno
 
 hearing is held regarding the statements of the alleged mentally retarded person, the court is under a mandate to exclude any such statement unless the proof is beyond a reasonable doubt that the statement is free and voluntary.
 
 (People
 
 v.
 
 Jimenez,
 
 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672].) What are the practical consequences of such a holding?
 

 If a person lacks the mental capacity to understand what he is doing, his confession or admission is inadmissible. (Witkin, Cal. Evidence (2d ed.) p. 437.)
 
 [1]
 
 In
 
 People
 
 v.
 
 MacPherson,
 
 2 Cal.3d 109, 115 [84 Cal.Rptr. 129, 465 P.2d 17], the court held that a confession (or an admission) must be the product of a “rational intellect” and a “free will.” If a person does not have the mental capacity to refrain from making a statement, that statement is obviously not the product of a rational intellect or a free will. When dealing with a mentally retarded person, it is almost impossible to conclude that any statement is the result of a rational intellect and a free will. Thus, though in Emmett’s case there is no evidence of force, duress, threats, promises of immunity or other of the traditional indicia of a coerced admission or confession, the officers (and the doctors and members of the family) certainly cajoled him into talking. It is highly questionable that a mentally retarded person would talk about his incendiary proclivities with a “rational intellect” and a “free will.”
 

 
 *249
 
 In this case the request for a
 
 Jackson
 
 v.
 
 Denno
 
 hearing was made only in regard to the statements to the officers. But what about the statements Emmett made to others? As to the examining doctors, we run smack up against the application of the criminal law to statements made to court-appointed psychiatrists.
 
 (In re Spencer,
 
 63 Cal.2d 400 [46 Cal.Rptr. 753, 406 P.2d 33];
 
 People
 
 v.
 
 Price,
 
 63 Cal.2d 370 [46 Cal.Rptr. 775, 406 P.2d 65].) Thus, under this ruling the doctors will be proscribed from giving to the jury any conversation they might have with the person who lacks the rational intellect and the free will to make a voluntary statement. Ridiculous as it may seem we find the same problems with Emmett’s statements to his grandmother and to his cousin. An involuntary confession or admission is inadmissible when made to a nonstate agent.
 
 (People
 
 v.
 
 Haydel, 12
 
 Cal.3d 190 [115 Cal.Rptr. 394, 524 P.2d 866].)
 

 Thus, under the ruling we have made today, if proper objection is made, there is no way that the jury is ever going to find out that Emmett is an arsonist unless he is caught in the act. The statements of Emmett or any other mentally retarded person in regard to his dangerousness inevitably concern criminality. Therefore, these statements may not be presented to the jury. The only time the jury is going to have any information concerning the dangerous proclivities of a mentally retarded person is in the case where actual eyewitness evidence may be presented concerning those dangerous tendencies as in such crimes as assault.
 

 In my humble opinion the Supreme Court should take another hard look at
 
 Tyars.
 

 Tyars
 
 said that Welfare and Institutions Code sections 6500-6512 “. . . must be deemed essentially civil in nature. . . . The sole state interest, legislatively expressed, is the custodial care, diagnosis, treatment, and protection of persons who are unable to take care of themselves and who for their own well being and the safety of others cannot be left adrift in the community. The commitment may not reasonably be deemed punishment either in its design or purpose. It is not analogous to criminal proceedings.”
 
 (Cramer
 
 v.
 
 Tyars, supra, 23
 
 Cal.3d 131, 137.)
 

 I am concerned with the picture of Emmett Shay “adrift in the community” with a pocket full of matches.
 

 McDaniel, J., concurred.
 

 A petition for a rehearing was denied July 3, 1979, and respondent’s petition for a hearing by the Supreme Court was denied August 15, 1979.
 

 [1]
 

 Section 6500.1 was renumbered section 6500 and amended by Statutes 1978, chapter 1319, section 2. All further references in this opinion to Welfare and Institutions Code section 6500.1 are to be construed as Welfare and Institutions Code section 6500.
 

 [2]
 

 Counsel’s argument that Emmett is not really dangerous because he has only set three fires and these occurred about a year apart, falls on deaf ears. One fire is enough. A mentally retarded person who sets fire to the house of those at whom he is angry is a walking time bomb. Arson is a particularly terrifying crime since it strikes blindly and without warning.
 

 [1]
 

 Here, we are obviously dealing with admissions. One cannot very well confess that he is mentally retarded or that he is dangerous. Nevertheless, statements admitting criminal conduct would, under
 
 Cramer
 
 v.
 
 Tyars, supra,
 
 23 Cal.3d 131, come under the umbrella of the admission-confession concept.