[No. B013269. Second Dist., Div. Three. Sept. 25, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
CARNELL ANTHONY, Defendant and Appellant.

1116

**COUNSEL**

Corrine S. Shulman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, William R. Weisman and Paul C. Ament, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### ARABIAN, J.—

#### INTRODUCTION

In this case we are asked to determine whether a defendant, incarcerated in jail, who initiates telephone conversations with the police at another facility, is "in custody" such that *Miranda* warnings are required. We hold that he is not.

#### PROCEDURAL HISTORY

Following a court trial, Carnell Anthony (appellant) was found guilty of second degree murder (Pen. Code, § 187, count I) and attempted second degree murder (Pen. Code, §§ 664/187, count III). The court found defendant not guilty of robbery (Pen. Code, § 211) as charged in counts II and IV of the information. A minute order in the clerk's transcript states that, as to counts I and III, the trial court found true the allegations that in the commission/attempted commission of those offenses, appellant personally used a firearm, to wit, a handgun, within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1). However, the reporter's transcript of the court's oral pronouncement of judgment contains no such findings.

Appellant was denied probation and was sentenced to the term of seventeen years to life on count I (fifteen years to life for second degree murder, plus a two-year enhancement pursuant to Penal Code sections 12022.5 and 1203.06, subdivision (a)(1)), and nine years on count III (seven years for attempted second degree murder, plus a two-year enhancement pursuant to Penal Code sections 12022.5 and 1203.06, subdivision (a)(1)). The sentences on counts I and III were ordered to run concurrently.

Appellant was given credit for 748 days in custody which included 249 days credit for good time/work time. He appealed. We affirm the judgment as modified.

#### STATEMENT OF FACTS

Dexter Carl Willingham testified that on July 20, 1983, he was visiting Ron Belt at Belt's apartment in the City of Compton. While they were

watching television, appellant entered the apartment and engaged in a conversation with Belt. Thereafter, appellant stood up, pointed a gun at Belt, demanded his money, and then shot and killed him. Appellant pointed the gun at Willingham, instructed him to search Belt's pockets, demanded Willingham's money and then told him to lie on the ground. Willingham lost consciousness; he remembered awakening and being taken to an emergency room for treatment of a gunshot wound.

### Conversation No. 1

Following his arrest on the evening of September 21, 1983, appellant spoke with Officer Stone Jackson in an interview room at the Compton Police Department. Officer Jackson advised appellant of his constitutional rights prior to any interrogation, and appellant indicated he understood them. When Officer Jackson asked appellant if he wished to waive his rights and discuss the matter with the police, appellant said "he would talk about a robbery, but he didn't know anything about [any] murders, or he didn't want to talk to [Officer Jackson] about this particular incident or any murders." Appellant stated that he wanted "to think about it" before speaking with Jackson. Jackson told appellant that, since appellant did not want to talk about it, he could not talk to him then. Nonetheless, the conversation continued.

During this conversation, Jackson told appellant: "'You might want to think about it. We can prove you [were] there. That's why we got a warrant. We have some other stuff [and] we can verify you [were] there. . . . Your brother's looking at gas chamber time. They found special circumstances which means they might go for death. . . . What I'm saying—off the record—I'm 99 percent sure we got you.'" Officer Jackson then described burglary and robbery and felony murder for appellant and told him: "'You've got tonight to think about it. Tomorrow you have to go to court. We have a warrant. We had enough to get a warrant.'"

### Conversation No. 2

The following morning, on September 22, 1983, at 8:47 a.m., appellant was booked at county jail. At approximately 9 a.m., Officer Jackson spoke with appellant again. Investigators Eve Mason and Alfred Preston were also present. During this tape-recorded conversation, Officer Jackson or Investigator Mason told appellant that "three people . . . identified him coming out of the house;" this statement was not in fact true. Jackson could not remember whether appellant asked for an attorney. Jackson, however, testified he told appellant that if he got a lawyer, "'he's going to get you to shut your mouth, your lawyer, and we still ain't going to get your side.'"

When appellant asked "'why not,'" Officer Jackson or Investigator Mason replied, "'well, how are we going to talk to your lawyer?'"

During most of this conversation, appellant indicated he didn't know what the police were talking about. However, he began to break down during the conclusion of the interview, showed them a crease on his shoulder and said he had been shot or stabbed by someone connected with Ron Belt.[1] Following the conversation, appellant was arraigned.

### Conversations No. 3 and No. 4

After the passage of 24 hours, on September 23, 1983, around 11 a.m. or noon, appellant of his own volition telephoned the Compton Police Department and spoke with Officer Jackson and Investigator Mason. Appellant made the telephone call from the lock-up at the Compton courthouse. He was disconnected at one point and called the officers back a second time. During the course of these conversations, which were tape-recorded, appellant stated, "No, I didn't intend [anything]. All that happened . . . so fast . . . one thing led to another thing, and this . . . Carlton Willingham . . . he was in the wrong spot." The People concede that during these telephone conversations appellant was not warned of his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

At trial, defense counsel objected to the introduction of appellant's September 23, 1983, telephone conversations with Officer Jackson and Investigator Mason. However, following an Evidence Code section 402 hearing, the trial court ruled that the conversations were *voluntarily* initiated by appellant and admitted the tape-recorded conversations into evidence.

### Defense

Appellant, testifying on his own behalf, presented an alibi defense and stated he lied to the police about having been at Belt's apartment at the time of the shooting.

### CONTENTIONS

1. The trial court erred in admitting into evidence appellant's September 23, 1983, tape-recorded statements to the police over the telephone, because the statements were not volunteered, but were in fact responses to continuing interrogation by the police.

---

[1]At trial, the People did not seek to admit evidence of the two tape-recorded conversations of September 21 and September 22, 1983.

2. Since appellant's September 23, 1983, statements over the telephone were not volunteered, but were made in response to continuing police interrogation, the police had an obligation to:

(a) contact counsel for appellant before any further questioning; and

(b) stop questioning appellant because he had invoked his right to remain silent.

3. The trial court erred in finding that appellant's initiation of the September 23, 1983, telephone calls to the police was voluntary.

4. Appellant's enhanced sentence for firearm use must be stricken because the reporter's transcript of the court's oral pronouncement of judgment contains no such findings.

### DISCUSSION

I. *The trial court properly admitted into evidence appellant's September 23, 1983, telephone conversations with the police.*

 Appellant contends the trial court erred in admitting into evidence his September 23, 1983, telephone conversations with Officer Jackson and Investigator Mason, because the statements were not volunteered, but were in fact responses to continued interrogation by the police. The People urge, however, that since appellant was not "in custody" when he placed the telephone calls to the police, his statements were not the result of a "custodial interrogation" and thus the inquiry whether the statements were "volunteered" is irrelevant.

 "Custodial interrogation," which must be preceded by *Miranda* warnings, is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 444 [16 L.Ed.2d at p. 706].)

This case involves an application of the *Miranda* rules in the setting of an incarceration. Nothing in *Miranda* suggests that an inmate is automatically "in custody" and therefore entitled to *Miranda* warnings merely by virtue of his prisoner status. (*United States* v. *Conley* (4th Cir. 1985) 779 F.2d 970, 972; *People* v. *Scalf* (10th Cir. 1984) 725 F.2d 1272, 1275-1276; *Cervantes* v. *Walker* (9th Cir. 1978) 589 F.2d 424, 427; but see *United States* v. *Cadmus* (S.D.N.Y. 1985) 614 F.Supp. 367, 372.)

The Ninth Circuit faced precisely this issue in *Cervantes* v. *Walker, supra,* 589 F.2d 424. In that case, a deputy sheriff found a box containing a green odorless substance during a routine search of defendant's belongings while moving defendant from one jail cell to another. When the deputy sheriff spontaneously asked defendant what was in the box, defendant admitted it was marijuana. At trial, the defendant, citing *Mathis* v. *United States* (1968) 391 U.S. 1 [20 L.Ed.2d 381, 88 S.Ct. 1503], argued that his statement was elicited in violation of *Miranda* and was, therefore, inadmissible. The *Cervantes* court determined that *Mathis* did not suggest an inmate is automatically "in custody" and therefore entitled to *Miranda* warnings merely by virtue of his prisoner status, and held, under the circumstances in that case, the interrogation of the defendant was not custodial.[2] (*Cervantes* v. *Walker, supra,* 589 F.2d 424, at p. 429.)

We also decline to read *Mathis* to compel that *Miranda* warnings be given to a prisoner or jail inmate under all circumstances. A prisoner or one incarcerated in jail is not automatically in "custody" within the meaning of *Miranda.* As the Ninth Circuit pointed out, a contrary approach would "torture [*Miranda*] to the illogical position of providing greater protection to a prisoner than to his nonimprisoned counterpart." (*Cervantes* v. *Walker, supra,* 589 F.2d at p. 427.)

The question remains whether there was a custodial interrogation in this case. The United States Supreme Court has held that, notwithstanding a "coercive environment," there is no custody for *Miranda* purposes unless the questioning takes place "in a context where [the questioned person's] freedom to depart [is] restricted . . . ." (*Oregon* v. *Mathiason* (1977) 429 U.S. 492, 495 [50 L.Ed.2d 714, 719, 97 S.Ct. 711, 714].) In recent articulations of the custody standard, the inquiry has been refined to whether there is "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (*California* v. *Beheler* (1983) 463 U.S. 1121, 1125 [77 L.Ed.2d 1275, 1279, 103 S.Ct. 3517, 3520] (*per curiam*), quoting *Oregon* v. *Mathiason.*)

"Prisoner interrogation simply does not lend itself easily to analysis under the traditional formulations of the *Miranda* rule. A rational inmate will

---

[2]See also *Flittie* v. *Solem* (8th Cir. 1985) 751 F.2d 967, adhered to, en banc (8th Cir. 1985) 775 F.2d 933, cert. den. (1986) 475 U.S. 1025 [89 L.Ed.2d 333, 106 S.Ct. 1233] and *United States* v. *Scalf, supra,* 725 F.2d 1272, 1275, approving the view in *Cervantes* that an inmate is not ipso facto "in custody" under *Mathis.*

Other circuits have concluded that a prison inmate was in custody for *Miranda* purposes, citing *Mathis,* without addressing the more basic issue of whether that decision mandates the giving of *Miranda* warnings to prison inmates in all circumstances. (See, e.g., *Battie* v. *Estelle* (5th Cir. 1981) 655 F.2d 692; *Palmigiano* v. *Baxter* (1st Cir. 1974) 510 F.2d 534, revd. on other grounds (1976) 425 U.S. 308 [47 L.Ed.2d 810, 96 S.Ct. 1551].)

In *United States* v. *Cadmus* (S.D.N.Y. 1985) 614 F.Supp. 367, 370, the district court held that, under *Mathis,* persons in prison are "in custody."

always accurately perceive that his ultimate freedom of movement is absolutely restrained and that he is never at liberty to leave an interview conducted by prison or other government officials. Evaluation of prisoner interrogations in traditional freedom-to-depart terms would be tantamount to a *per se* finding of 'custody,' a result we refuse to read into the *Mathis* decision. [¶] A different approach to the custody determination is warranted in the paradigmatic custodial prison setting where, by definition, the entire population is under restraint of free movement." (*United States* v. *Conley, supra,* 779 F.2d at p. 973.)

In *Cervantes, supra,* 589 F.2d 424, the Ninth Circuit took the position that "restriction" is a relative concept and that, in the prison situation, it "necessarily implies a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement." (*Id.,* at p. 428.) Thus, in defining the concept of "restriction," the court looked to the objective, reasonable person standard and the four factors of the "'free to leave'" test. (*Ibid.*) The court in *Cervantes* stated that "the language used to summon the individual, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the additional pressure exerted to detain him must be considered to determine whether a reasonable person would believe there has been a restriction of his freedom over and above that in his normal prisoner setting. Such a situation requires *Miranda* warnings." (*Ibid.*)

 Here, appellant was not summoned; he initiated the two September 23, 1983, telephone calls to the Compton Police Department. At the time of these calls, appellant was not in the presence of Investigator Mason nor Officer Jackson, who were the two participants in the three-way conversations with appellant. It is likely the police did not even know for certain appellant's location while they were speaking with him, although they must have assumed he placed the telephone calls from county jail.[3] Further, the officers did not confront appellant with evidence of his guilt while they were speaking with him nor could they have, under the circumstances, exerted additional pressure to detain him. Thus, appellant's freedom of movement during these conversations cannot be characterized as *more* restricted than the usual restraint on a jail inmate's liberty to depart. (*Cervantes* v. *Walker, supra,* 589 F.2d at p. 428.)

Appellant's conversations with the police were hardly the sort of "incommunicado interrogation . . . in a police-dominated atmosphere" that operates to "overcome free choice" at which the *Miranda* rule was aimed.

---

[3] Appellant testified he placed the telephone calls from the lock-up of the Compton courthouse.

(*Miranda* v. *Arizona, supra,* 384 U.S. at pp. 445, 448-449, 474 [16 L.Ed.2d at pp. 707, 709]; *People* v. *Murphy* (1972) 8 Cal.3d 349, 361 [105 Cal.Rptr. 138, 503 P.2d 594], cert. den., *Murphy* v. *California* (1973) 414 U.S. 833 [38 L.Ed.2d 68, 94 S.Ct. 173].) Unlike an in-custody interviewee who is "painfully aware that he literally cannot escape a persistent custodial interrogator," appellant was not compelled to speak with the police; he *voluntarily* initiated the telephone calls and could have terminated them at any time he desired. (See *Minnesota* v. *Murphy* (1984) 465 U.S. 420, 433 [79 L.Ed.2d 409, 423, 104 S.Ct. 1136].)

We conclude the decision of the police to participate in the September 23, 1983, telephone conversations initiated by appellant did not constitute custodial interrogation triggering the requirement that *Miranda* warnings be given. Therefore, the question whether appellant's statements were "volunteered" (and, therefore, excepted from the *Miranda* requirement) is irrelevant.

II. *The trial court correctly determined that appellant's initiation of the September 23, 1983, telephone conversations was voluntary.*

■ Appellant contends his initiation of the September 23, 1983, telephone calls to the police was not voluntary because the police engaged in improper conduct during appellant's previous conversations with them on September 21 and 22, 1983. Therefore, they conclude the trial court admitted appellant's September 23, 1983, telephone conversations into evidence in error. The People urge, however, that the conversations were correctly admitted because any improper police activity during previous interviews was purged by the 24 hours separating these conversations from appellant's September 23, 1983, telephone calls.

■ Although *Miranda* prohibits questioning once an individual has asserted his constitutional rights, it does not prohibit subsequent admissions or confessions which are voluntarily initiated by the suspect. (*People* v. *McClary* (1977) 20 Cal.3d 218, 226 [142 Cal.Rptr. 163, 571 P.2d 620]; *People* v. *Fioritto* (1968) 68 Cal.2d 714, 719 [68 Cal.Rptr. 817, 441 P.2d 625].) Accordingly, where the prisoner or suspect initiates a subsequent interview, evidencing a change of mind not affected by police action, there may be an admissible confession or admission. (*People* v. *Fioritto, supra,* 68 Cal.2d at p. 719.)

■ "It is the reviewing court's duty to examine the uncontradicted facts to determine independently whether the trial court properly concluded that a confession was voluntary. The burden is on the prosecution to show voluntariness. When presented with conflicting testimony, we do not reweigh

it on appeal, and thus we accept the version of events most favorable to the People, to the extent it is supported by the record. (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 602, 609 [147 Cal.Rptr. 172, 580 P.2d 672], and cases cited therein; *People* v. *Haydel* (1974) 12 Cal.3d 190, 198 [115 Cal.Rptr. 394, 524 P.2d 866].) [¶] The totality of the circumstances must be examined to determine whether the confession was the product of a rational intellect and a free will. (*People* v. *Haydel, supra,* 12 Cal.3d 190, 198.) ▮ When an illegally obtained confession is followed by a subsequent confession, it is presumed the second confession is the product of the same improper police conduct which induced the first confession, absent a showing by the prosecution of a break in the causative chain between the two confessions." (*People* v. *Dingle* (1985) 174 Cal.App.3d 21, 27, fn. omitted [219 Cal.Rptr. 707]; see *People* v. *McClary, supra,* 20 Cal.3d at p. 227.)

▮ The factors which must be considered in determining whether a confession was voluntary, include the age and intelligence of the accused, the nature and degree of police influence and the time span between the confession. (*People* v. *McClary, supra,* 20 Cal.3d at pp. 227-230; *People* v. *Dingle, supra,* 174 Cal.App.3d at pp. 27-28.)

▮ After considering the evidence and hearing arguments by defense counsel and the prosecution, the trial court concluded appellant voluntarily initiated the September 23, 1983, conversations with the police. The trial court observed that, inasmuch as 24 hours elapsed between appellant's earlier telephone conversations with the police and the September 23, 1983, telephone conversations, any police impropriety had been "purged." The court reasoned that, during those 24 hours, appellant had ample opportunity to reflect, to speak with fellow jail inmates and to consult with not one, but two attorneys,[4] who were available to him.[5]

---

[4]During the course of appellant's September 21, 1983, conversation with the police, appellant told Officer Jackson he had a pending robbery case and was represented by an attorney in that case.

[5]The trial court observed: "[Appellant] was out of the immediate control of the police officers or of the immediate jail environment and was returned to the general jail population in the county jail. And without more on this record, I have to assume or take judicial notice of the fact that while he was in the county jail, he was among fellow inmates and had available to him not one, but two lawyers; that he had an opportunity to reflect on what had been suggested to him by Officer Jackson and his fellows . . . there not being anything in the record that that opportunity was in any way diminished or interfered with."

The court, after reviewing the transcripts of the September 23, 1983, taped conversations and examining the totality of the circumstances, stated: "I've reviewed and read [the People's exhibits concerning the taped conversations]. I haven't found anything in those reports which leads me to the conclusion that the statements were not voluntary. In fact, there's a passage . . . by Mr. Anthony himself where he two or three times points out the fact that he was under no obligation to make that phone call."

Therefore, the court concluded "there [was a] sufficient interim of respite that the phone call was voluntary as pointed out by Mr. Anthony."

We note appellant testified his reason for calling the Compton Police Department on September 23, 1983, was "[t]o see how much they really knew about this case" and, in the taped conversations, appellant stated a few times that he had no obligation to make the telephone calls.

We hold, therefore, that the trial court correctly concluded appellant's telephone conversations of September 23, 1983, resulted from his own independent decision to talk to the police. While the trial court did not comment on the age nor intelligence of appellant in finding he had voluntarily initiated the telephone calls, the court had an opportunity to judge these factors by observing appellant's demeanor in his courtroom and by reading the transcript of the taped conversations. The trial court specifically determined that under all the circumstances, 24 hours was a sufficient amount of time to "purge" appellant's conduct in making the September 23, 1983, telephone calls of any police impropriety. We agree that appellant's decision to make the calls was not a result of police influence. Therefore, the trial court properly admitted the tape-recorded conversations into evidence.

III. *The two-year enhancements for firearm use must be stricken.*

■ Appellant contends the two-year enhancements in counts I and III for firearm use must be stricken because the reporter's transcript of the court's oral pronouncement of judgment is silent as to such findings. Appellant's contention has merit.

The reporter's transcript, dated December 19, 1984, shows the court's oral pronouncements contain no findings on the enhancement allegations for firearm use as to counts I and III. The clerk's minutes for that date, however, indicate in error that the court found true, as to counts I and III, the allegations that appellant personally used a firearm within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1). In accordance with the erroneous minutes, appellant received two-year enhancements for firearm use on the sentences imposed for both counts I and III.

When the record is silent on enhancement allegation findings, it may be inferred that the omission was an act of leniency by the trial court. In such circumstances, the silence operates as a finding that the enhancement allegation was not true. (See *In re Candelario* (1970) 3 Cal.3d 702, 706 [91 Cal.Rptr. 497, 477 P.2d 729].)

The oral pronouncement is controlling (*People* v. *Mesa* (1975) 14 Cal.3d 466, 471 [121 Cal.Rptr. 473, 535 P.2d 337]; a court has the inherent power to correct clerical errors in its records in order to make these records reflect

the true facts (*People* v. *Schultz* (1965) 238 Cal.App.2d 804, 807 [48 Cal.Rptr. 328]).

### CONCLUSION

The totality of these circumstances compels the conclusion that the statements in question were the product of a free and rational choice and mind.

Just as an accused has a right to remain mute, so too, after an initial proper admonition, does he have an undoubted right to communicate his sentiments as he pleases.

To hold otherwise would be to lay an impermissible restraint upon freedom of thought, speech and inquiry.

To require additional *Miranda* admonitions to one who initiates a conversation from a place outside the immediate presence of his accusers would result in the imposition of unwarranted prophylactic or prudential measures and disrupt both common sense and the administration of criminal justice.

### DISPOSITION

The trial court is directed to strike the enhancement findings for firearm use (counts I and III) from the superior court's minute order of December 19, 1984, and to strike the two-year sentence enhancement (counts I and III) from the minute order of January 31, 1985, and the judgment of that date. In all other respects, the judgment is affirmed.

Klein, P. J., and Herrington, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.