Filed 2/10/16  P. v. Corona CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C078338 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F05260) |
| v. | |
| JOSE JUAN CORONA, | |
| Defendant and Appellant. | |

This case comes to us pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Having reviewed the record as required by *Wende*, we affirm the judgment, but order a correction of the abstract of judgment.

We provide the following brief description of the facts and procedural history of the case.  (See *People v. Kelly* (2006) 40 Cal.4th 106, 110, 124.)

**FACTUAL AND PROCEDURAL BACKGROUND**

At approximately 5:30 p.m. on July 30, 2014, two young girls, J.M. and B.B., were walking around Tahoe Park when they saw defendant forcefully "jerk" a dog up off the ground by a leash causing the dog's front paws to leave the ground.  B.B. saw

1

defendant kick the dog two or three times as it dangled by the leash. When defendant put the dog on the ground, the girls noticed the dog's leg was "twisted" and the dog was limping.

The girls summoned B.B.'s mother M.B. to the area. She saw defendant holding the leash attached to the dog, whose four paws were dangling off the ground as the dog struggled and flailed about. As M.B. walked toward defendant, defendant put the dog down. M.B. noticed the dog was balancing on three legs. When M.B. asked if there was something wrong with the dog's leg, defendant told her the dog had been hit by a car "a few days ago." Defendant continued to handle the dog in a "rough" manner. M.B. walked away and called 911.

At 7:00 a.m. the next morning, July 31, 2014, Kelly Smith observed defendant sleeping in Tahoe Park next to some restrooms. Defendant's dog, Soldier, a miniature pinscher, was sleeping next to him. When the dog woke up, it walked around defendant on all four legs with no apparent injuries. Defendant got up and used the restroom while the dog waited outside. Defendant put his belongings on his bicycle and yelled at the dog, " 'Come on bitch. Let's go.' " Smith thought defendant sounded "[a]ggravated, possibly intoxicated." The dog cowered and backed up. Defendant grabbed the rope attached to the dog, pulled the dog over to him, and put the dog on top of his belongings on the handlebars. When defendant tried to ride off, however, the dog fell off. Defendant grabbed the rope and "pulled it hard enough to where it jerked the entire dog's body up in the air and all the dog's legs, period, went up under the front tire of the bicycle." As he did so, he yelled, " 'Come on you fucking bitch, let's go. Come on you fucking bitch. Let's go. We got to get the fuck out of here.' " Defendant ran over the dog, causing the dog to yelp and cry out, and then limp. He yelled, " 'Come on bitch before I fucking kill you.' " Smith called 911 and tried to follow defendant.

Angela Lewis also observed defendant that morning yelling obscenities at the dog, then running over the dog's leg with his bicycle, causing injury to the dog's leg. When

2

she confronted defendant, he became very angry. He grabbed the dog by the leash and began "swinging the dog around" as it dangled in the air. Eventually, he grabbed the dog by its throat, choking and shaking it and yelling, " 'I'm going to kill you, you son of a bitch.' " The dog was yelping and kicking its legs. Defendant threw the dog on top of the bags on his handlebars, but the dog fell off onto its side. Lewis began crying and begging defendant not to hurt the dog. She offered him money in exchange for the dog but defendant refused, cursing at her. When Smith called the police, defendant yelled at the dog, " 'I don't give a fuck about your foot being hurt because they're calling the cops on us.' " He got on his bicycle and, holding the leash in one hand, began pedaling away nearly dragging the dog as it tried to keep up with him while hopping on three legs.

Sacramento Police Officer Liesl Marin was dispatched to Tahoe Park at approximately 8:00 a.m. that morning. After gathering information from Kelly Smith, who was visibly upset, Officer Marin drove around looking for defendant. She was waived down by and spoke with Angela Lewis, who was also visibly upset. Officer Marin found defendant in a courtyard near a liquor store. After initially walking away and attempting to hide behind a bush, defendant approached and directed Officer Marin around the corner where the dog was. Officer Marin noticed the dog, which was trembling, was standing on three legs with the fourth leg "sort of hanging limp."

Animal control officers took the dog to the veterinary medical center, where it was examined by a veterinarian, who testified the dog was in significant pain and suffering from bruising to the left eye and two broken bones in the dog's right hind leg.

Defendant was charged by amended information with maliciously and intentionally maiming, mutilating, torturing, or wounding a living animal, a Miniature Pinscher. (Pen. Code, § 597, subd. (a); undesignated references are to this code.) The amended information alleged defendant served a prior prison term within the meaning of section 667.5, subdivision (b).

3

Defendant was tried by a jury and convicted as charged. He waived his right to a jury trial on the prior prison term allegation, which he thereafter admitted.

The trial court denied probation and sentenced defendant to the upper term of three years, plus an additional one year for the prison prior, for an aggregate term of four years, to be served pursuant to section 1170, subdivision (h)(5)(B), as a split term with two years served in county jail and the remaining two years suspended under mandatory supervision. The court awarded defendant 325 days of presentence custody credit (163 actual days plus 162 days of conduct credit).

The court imposed fees and fines, including a $500 restitution fine (§ 1202.4); a $30 criminal conviction assessment (Gov. Code, § 70373); a $40 court security fee (§ 1465.8); a $340.01 main jail booking fee (Gov. Code, § 29550.2); and a $62.09 main jail classification fee (Gov. Code, § 29550.2). The court also ordered defendant to pay victim restitution to the City of Sacramento in the amount of $2,806. Defendant relinquished ownership of the dog, waiving his right to a hearing in that regard.

Defendant filed a timely notice of appeal.

## *WENDE* REVIEW

Counsel filed an opening brief that sets forth the facts of the case and requests that we review the record and determine whether there are any arguable issues on appeal. (*Wende, supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days have elapsed, and we have received no communication from defendant.

We note two errors in the abstract of judgment. The trial court orally imposed a main jail booking fee (Gov. Code, § 29550.2) in the sum of $340.01, but the abstract recites the amount as $382.22. Similarly, while the court orally imposed a main jail classification fee (Gov. Code, § 29550.2) in the sum of $62.09, the abstract recites the amount as $61.75. Where there is a discrepancy between the oral pronouncement of judgment and the abstract of judgment, the oral pronouncement controls. (*People v.*

4

*Farell* (2002) 28 Cal.4th 381, 384, fn. 2; *People v. Mesa* (1975) 14 Cal.3d 466, 471.) This is because the pronouncement of judgment is a judicial function, while the entry into the minutes and the abstract of judgment is a clerical function; therefore, any inconsistency is presumed to be the result of clerical error. (*Ibid.*) Under our inherent authority to correct such clerical errors (*People v. Rowland* (1988) 206 Cal.App.3d 119, 123; *People v. Anthony* (1986) 185 Cal.App.3d 1114, 1125-1126), we shall order the court records modified to conform to the trial court's oral pronouncement of judgment, and we shall do so.[1]

Having undertaken an examination of the entire record, we find no other arguable error that would result in a disposition more favorable to defendant.

---

[1] Government Code section 29550.2, subdivision (a), provides that "[t]he fee which the county is entitled to recover pursuant to this subdivision shall not exceed the actual administrative costs . . . ." There is nothing in the record to tell us whether the fee the court orally imposed exceeds the administrative costs, but will presume the trial court imposed the fee that is authorized by statute in the absence of a demonstration of error by defendant. (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549; Evid. Code, § 664.)

## DISPOSITION

The judgment is affirmed.  The trial court is ordered to prepare an amended abstract of judgment to reflect a main jail booking fee in the amount of $340.01, and a main jail classification fee in the amount of $62.09, and to forward a certified copy of the amended abstract to the county sheriff.

                                                 MURRAY , J.

We concur:

NICHOLSON , Acting P. J.

RENNER , J.

6