Filed 11/15/22  P. v. Tatum CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　v.<br><br>DARRELL TATUM,<br><br>　　Defendant and Appellant. | B314563<br><br>(Los Angeles County<br>Super. Ct. No. NA110863) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Chet L. Taylor, Judge.  Affirmed in part, vacated in part, and remanded with directions.

Janet Uson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Darrell Tatum appeals from his conviction on seven counts of second degree robbery (Pen. Code, § 211),[1] one count of attempted second degree robbery (§§ 211, 664), one count of unlawful possession of a firearm by a convicted felon (§ 29800, subd. (a)(1)), and one count of unlawful possession of ammunition (§ 30305, subd. (a)(1)). Six of the second degree robbery counts included allegations that appellant had personally used a firearm while committing the offense (§ 12022.5, subd. (a)). The trial court sentenced appellant to an aggregate term of 29 years 6 months in prison, including 15 years 4 months for the firearm enhancements.[2]

Appellant raises a plethora of arguments against his conviction and subsequent sentence. We reject all but one of these arguments, namely, that appellant is eligible for resentencing pursuant to recently enacted section 1170, subdivision (b). Accordingly, we vacate the defendant's sentence and remand this matter to the trial court for resentencing proceedings consistent with this opinion.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     At the sentencing hearing, the trial court incorrectly totaled appellant's discrete sentences. The abstract of judgment sets forth the correct aggregate judgment.

# FACTUAL AND PROCEDURAL BACKGROUND

## I.  The Robberies

In January 2019, appellant was charged with committing or attempting numerous robberies (charged as counts 1-6 and 11-12), most of which took place at retail stores throughout the Long Beach area.

Three of those robberies are relevant to this appeal.  The first (charged as count 6) took place at a Cricket Wireless store (the Cricket Wireless robbery).  The robber posed as a customer, brandished a handgun at a pregnant employee, and yelled for her to open the registers.  He then emptied the registers and left the store.  A police officer who responded to the scene watched surveillance video and spoke with the victim, who reported that the robber was a 50-year-old Black man using a silver handgun.

The victim later identified the robber as appellant, picking his photograph from a six-photograph lineup.  She said that appellant was "[t]he only guy that looked familiar," and that she "noticed his eyes."  Upon seeing his picture, she definitively stated, "[h]e's the guy that came in the store."

The second robbery (charged as count 11) occurred at a Subway sandwich store (the Subway robbery).  Officer Kevin Menjivar responded to the scene, where he met with the victim, an employee, and a witness, a customer.  They described the victim as a 35- or 45-year-old Black man wearing, among other things, a black baseball cap.  This robbery was also captured on surveillance video, which Officer Menjivar reviewed.  He noted that the suspect wore a black cap, consistent with the victim and witness' observations.

Officer Menjivar left the site of the Subway robbery when received a report of the third robbery (charged as count 12), which had just taken place at an ATM roughly five minutes away (the ATM robbery). The victim said that the robber had attacked him near to the ATM. When he retreated to his car in an attempt to get away, the robber pursued him, grabbed hold of his pants, and tried to yank them off. The robber succeeded in grabbing victim's money clip, with which he then absconded.

A witness gave Officer Menjivar the first four digits of the license plate number on the car the robber left in, a Volkswagen. A police detective later ran the partial license plate number and identified appellant as the owner of the car, a 2011 Volkswagen Jetta.

The witness also pointed out a black baseball cap that the robber had dropped on the ground next to the victim's car. Officer Menjivar took the cap into evidence, where it was later swabbed for DNA. Subsequent testing found that 94 percent of the DNA collected from the hat was consistent with appellant's DNA.

## II.    Search Warrant and Motion to Suppress Evidence

On December 13, 2018, Detective Brian Greene obtained a search warrant to search a residence on Cherry Avenue in Long Beach (the Cherry house) and two cars.

The statement of probable cause attached to the warrant described six recent robberies in detail, including the Cricket Wireless robbery. It also referenced a report written by Detective Jacqueline Parkhill, one of Detective Greene's colleagues, detailing the similarities between the robberies, and a conversation Detective Greene had with Detective Erik Perkett at the Las Vegas Police Department. Detective Perkett

forwarded information about appellant, who was suspected of a series of similar robberies committed in Las Vegas, and told Detective Greene that an arrest warrant filed for appellant in Las Vegas was attached to appellant's car.[3]

Elsewhere, the warrant request described the Cherry house and the cars to be searched, including appellant's car. Appellant had registered the car in his name, giving his address as the Cherry house.

Upon searching the Cherry house, police officers recovered a loaded semi-automatic shotgun, ammunition, and various pieces of clothing that matched eyewitness descriptions of how the suspect had dressed at various robberies.

### III.    Bench Trial, Motion to Suppress, and Conviction

Appellant represented himself at a bench trial. In December 2019, appellant filed a motion to suppress evidence (§ 1538.5), arguing, among other things, that the search warrant was insufficient. At the hearing, after soliciting additional argument from appellant, the trial court determined that the affidavit was facially sufficient and that the execution of the search warrant was valid.

After the trial, the trial court convicted appellant of seven counts of second degree robbery (§ 211 [counts 1-3, 5-6, 11-12]); one count of attempted second degree robbery (§§ 211, 664 [count 4]); one count of unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1) [count 7]), and one count of unlawful possession of ammunition (§ 30305, subd. (a)(1) [count 8]).

---

[3]    Appellant was arrested on the Las Vegas warrant on December 13, 2018, the same day the Cherry house search warrant issued.

5

At the sentencing hearing, the trial court sentenced appellant to an aggregate term of 29 years 6 months. The court selected count 1 as the base term, imposing a five-year sentence for the robbery charge (upper term, § 213, subd. (a)(2)) and a 10-year sentence for the firearm enhancement (upper term, § 12022.5, subd. (a)). For counts 2 and 12, including the ATM robbery, the court sentenced appellant to one year each (one-third of the middle term, § 213, subd. (a)(2)). It issued the same sentence for counts 3, 5, 6, and 11, along with a 16-month sentence on each count for the firearm use allegations (one-third of the middle term, § 12022.5, subd. (a)). On count 4, the trial court sentenced appellant to six months (one-third of the middle term, § 664) with an additional 16-month sentence for the firearm enhancement. On count 8, the court sentenced appellant to eight months (one-third of the statutory term, § 30305, subd. (a)(2)). On count 7, it sentenced appellant to eight months (one-third of the middle term, § 29800, subd. (a)(1)). Lastly, it sentenced defendant to an additional eight months for his admitted prior convictions.

Additionally, the trial court ordered appellant to pay a $300 restitution fee, a stayed $300 parole revocation restitution fine, and an additional $70 in security and facilities assessment fees on each conviction.

Appellant timely appealed.

## DISCUSSION

On appeal, appellant argues that (1) the trial court wrongfully denied his motion to suppress evidence obtained by a deficient search warrant; (2) two of his seven robbery convictions are supported by insufficient evidence; (3) the firearm sentencing enhancements must be struck because the court failed to make

6

specific findings as to any of the firearm allegations; (4) he is eligible for resentencing pursuant to section 1170, subdivision (b); and (5) apparent typographical errors in the abstract of judgment and minute order must be corrected.  We will address each of these arguments in turn.

## I.      Motion to Suppress Evidence

### A.      *Applicable Law*

A search warrant may only issue on a showing of probable cause.  (§§ 1525, 1527.)  Probable cause exists when the affidavit supporting the warrant states facts showing "a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238–239 (*Gates*).)  Accordingly, a warrant must establish a nexus between the suspected criminal activities and the property to be searched. (See *People v. Hernandez* (1994) 30 Cal.App.4th 919, 924.)

"A defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure" if the search or seizure "without a warrant was unreasonable" or where there was an absence of "probable cause for the issuance of the warrant."  (§ 1538.5.)  However, warrants are presumed valid and it is the defendant's burden to show otherwise.  (*People v. Amador* (2000) 24 Cal.4th 387, 393.)  "A defendant claiming that the warrant or supporting affidavit is inaccurate or incomplete bears the burden of alleging and then proving the errors or omissions.  [Citations.]"  (*Ibid.*, [citing, *Franks v. Delaware* (1978) 438 U.S. 154, 171–172]; see also *People v. Garcia* (2003) 111 Cal.App.4th 715, 720.)

7

"Our review of issues related to the suppression of evidence seized by the police is governed by federal constitutional standards." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1118; see Cal. Const., art. I, § 28, subd. (d).) "In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment. [Citation.]" (*People v. Lenart*, *supra*, at p. 1119.)

B.     *Analysis*

Appellant argues that the trial court erred in denying his motion to suppress evidence because the warrant purporting to authorize the search of the Cherry house was deficient in that it failed to establish any nexus between his alleged criminal activities and the house itself. However, the information contained in the search warrant contains more than enough information to connect the robberies to the Cherry house.

The 10-page warrant, titled "SEARCH WARRANT and AFFIDAVIT," contains a detailed description of six robberies, including details about the personal property allegedly worn, carried, or taken by the suspect. It then establishes multiple links between the robberies and appellant. It recounts how, upon receiving a tip from the Las Vegas Police Department, Detective Greene looked at photographs of appellant and determined that he fit the description of the suspect given by victims and/or witnesses at each of the six robberies. Detective Greene then states that the victims of two robberies positively identified appellant as the suspect out of a six-photograph lineup. The victim of an additional robbery could not definitively make an

8

identification, but said that "she leaned more towards" identifying appellant as the suspect over the five other men included in the photographic lineup. Lastly, the warrant establishes a nexus between appellant and the Cherry house, stating that appellant registered the car in his name, listing the Cherry house as his address. On appeal, appellant argues that his car registration cannot have established a nexus between him and the Cherry house because the statement of probable cause submitted by Detective Greene did not contain any information about the registration. But our review of the search warrant's sufficiency is not constrained to the statement of probable cause. Rather, "in reviewing the sufficiency of the facts upon which the magistrate or judge based his or her probable cause determination, we consider only the facts that appear within the "four corners of the warrant affidavit.' [Citation.]" (*People v. Clark* (2014) 230 Cal.App.4th 490, 497.) Appellant's proposition that we should consider only those facts that appear within the four corners of one *section* of the warrant affidavit is unsupported by any legal authority (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*) ["An appellant must provide . . . legal authority to support his contentions"]), and contrary to established constitutional law (*Bailey v. Superior Court* (1992) 11 Cal.App.4th 1107, 1111 ["Courts should not invalidate search or arrest warrants by imposing hypertechnical requirements rather than a commonsense approach to probable cause"].)

Appellant also argues that the warrant improperly "referred to" hearsay statements made by Detectives Parkhill and Perkett without establishing their credibility, in contravention of the Supreme Court's opinion in *Gates*. In that case, the court held that trial courts must assess the "'veracity'" and "'basis of

9

knowledge'" of persons supplying hearsay information that forms the basis of probable cause for a search warrant. (*Gates, supra*, 462 U.S. at pp. 238–239.)

Here, appellant specifically objects to the inclusion of Detective Parkhill's report theorizing that the robberies were committed by a single perpetrator, and to Detective Perkett's belief that the Long Beach robberies were connected to an earlier series of Las Vegas robberies. Neither of these statements form the basis of probable cause for this search warrant, which, as laid out above, was established by Detective Greene's comparison of appellant's photo to witness descriptions of a suspected robber, and by appellant's subsequent identification by some of the victims. In fact, Detective Parkhill's report and Detective Perkett's opinion could be wholly excised from the warrant without affecting the facts establishing probable cause.

Once again, appellant does not provide any legal authority for the proposition that a search warrant is facially deficient if the attesting officer does not provide a foundation establishing the credibility of every piece of information he encounters in developing a theory of probable cause. (*Benach*, *supra*, 149 Cal.App.4th at p. 852; see also *Gates*, *supra*, 462 U.S. at p. 230 [emphasizing that a search warrant's validity turns not on rigid tests of reliability, but on "the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place"].)

Ultimately, because the warrant established probable cause that a search of the Cherry house would yield evidence related to the robberies, we conclude that the trial court did not err in denying appellant's motion to suppress evidence.

## II. Sufficiency of the Evidence

### A. *Applicable Law and Standard of Review*

"'When reviewing a challenge to the sufficiency of the evidence, we ask "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for "'substantial evidence—that is, evidence which is reasonable, credible, and of solid value'" that would support a finding beyond a reasonable doubt. [Citation.] In doing so, we 'view the evidence in the light most favorable to the . . . verdict and presume the existence of every fact that the [finder of fact] could reasonably have deduced from that evidence.' [Citation.] 'We must also "accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence.'" [Citation.] We do not . . . reconsider the weight to be given any particular item of evidence." (*People v. Navarro* (2021) 12 Cal.5th 285, 302; *People v. Brooks* (2017) 3 Cal.5th 1, 57.)

### B. *Analysis*

Appellant contends that the evidence was insufficient to convict on two of the seven robbery charges. Specifically, he argues that he was not adequately identified as the perpetrator in either the Cricket Wireless robbery or the Subway robbery.

Appellant's connection to the Cricket Wireless robbery was supported by ample evidence, including the responding officer's testimony; surveillance video of the incident; and a positive identification from the victim of the robbery, who both gave a description of the robber that matched appellant's description

11

and picked appellant's photograph out of a six-photograph lineup, definitively stating that appellant was "the guy [who] came in here," and noting that she recognized his eyes. This evidence is plainly sufficient to support a conviction. (See, e.g., *People v. Sullivan* (2007) 151 Cal.App.4th 524, 564 [sufficient evidence to convict defendant where, among other things, defendant's appearance is consistent with both security footage of the crime and witness descriptions]; *People v. Helton* (1984) 162 Cal.App.3d 1141, 1145 [positive identification of perpetrator by the victim is sufficient evidence to support conviction].)

Similar evidence supports appellant's implication in the Subway robbery. Again, the trial court was presented with testimony from the responding officer and surveillance video of the robbery. The court viewed the video twice during the trial. Additionally, a hat consistent with that worn by the perpetrator of the Subway robbery was recovered from the site of the ATM robbery. The two robberies happened on the same night, and the site of the ATM robbery lay just five minutes away from the Subway robbery. A DNA test submitted into evidence found that appellant's DNA matched 94 percent of the DNA recovered from the band of the hat. This also constitutes substantial evidence supporting conviction. (See, e.g., *People v. Turner* (2020) 10 Cal.5th 786, 810 [statistical evidence regarding probability that DNA matches the defendant provides substantial evidence in support of guilty verdicts].)

Appellant raises a number of complaints against the convictions: neither victim provided an in-court identification, no witness described the robber as wearing distinctive clothing, a lack of any description of the weapon used in the Subway robbery, and conflicting evidence about the color of the firearm

12

used in the Cricket Wireless robbery. However, under our deferential standard of review, if the record contains "substantial evidence from which a reasonable trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt[,] 'the possibility that the trier of fact might reasonably have reached a different conclusion does not warrant reversal.'" (*People v. Taylor* (2004) 119 Cal.App.4th 628, 639.)

## III. Firearm Sentencing Enhancements

We next consider appellant's contention that the trial court wrongly imposed prison terms for multiple firearm sentencing enhancements, as it failed to expressly find whether the firearm use allegations were true.

### A. *Applicable Law*

"Punishment for a firearm-use enhancement may be imposed only if the trier of fact finds the enhancement allegation to be true." (*People v. Chambers* (2002) 104 Cal.App.4th 1047, 1049 (*Chambers*).) For a sentence to be imposed for a firearm use allegation "the existence of any fact required . . . shall be alleged in the [information or indictment] and either admitted by the defendant in open court or found to be true by the trier of fact." (§ 12022.53, subd. (j); see also *People v. Jackson* (1987) 193 Cal.App.3d 393, 404 [pursuant to § 1167, trial courts are required to make a finding on a sentencing enhancement at the time of trial].)

However, a trial court sitting as a finder of fact may make implied true findings on sentence enhancement allegations by imposing sentence enhancements consistent with the charged allegations, as long as those enhancements do not contradict the court's pronouncements at trial. In *Chambers*, the trial court was silent as to its finding on the charged firearm enhancement in its

13

oral findings following a bench trial, and did not include a finding on the enhancement in the minute order setting forth its findings. (*Chambers*, *supra*, 104 Cal.App.4th at p. 1049.) Nevertheless, at sentencing the trial court imposed a sentence on the firearm enhancement. (*Ibid*.) On appeal, the *Chambers* court affirmed the sentence, determining that the trial court's ultimate sentence supported an implied true finding on the firearm enhancement allegations. (*Id*. at p. 1051)

The *Chambers* court cited our Supreme Court's application of the same logic when evaluating analogous implied sentence enhancements issued for the defendant's prior felony convictions. (*Chambers*, *supra*, 104 Cal.App.4th at p. 1050 [citing, *People v. Clair* (1992) 2 Cal.4th 629, 691, fn. 17 ["At sentencing, the court impliedly—but sufficiently—rendered a finding of true as to the allegation when it imposed an enhancement expressly for the underlying prior conviction"].)

B. *Analysis*

The facts of this case are all but identical to those in *Chambers*. The trial court failed to expressly find whether any of the firearm use allegations were true at the conclusion of appellant's bench trial, simply stating that "all the counts in this case were proved beyond a reasonable doubt." The firearm use allegations were not mentioned until appellant's sentencing hearing, when the trial court went on to impose sentence enhancements on six of the firearm use allegations made against appellant. Accordingly, we will find that the trial court made implied true findings on those firearm allegations for which it imposed sentence enhancements.

14

Appellant urges us to turn away from *Chambers* and instead follow other cases—most of which were decided before *Chambers* or *Clair*—and find that the trial court's failure to make express findings entitles appellant to the inference "that the omission was an act of leniency," such that "the silence operates as a finding that the enhancement allegation was not true." (*People v. Anthony* (1986) 185 Cal.App.3d 1114, 1125.) There being so little daylight between appellant's case and *Chambers*, we are not persuaded to follow this line of older and less similar case law.

## IV. Resentencing

Alternately, appellant argues (and the People concede) that he is entitled to resentencing on the firearm enhancements pursuant to recent sentencing reform law. We agree.

### A. *Applicable Law*

On January 1, 2022, while this appeal was pending, several amendments to the Penal Code regarding sentencing took effect. As relevant here, Senate Bill No. 567 amended section 1170, subdivision (b) in two ways: First, it makes the middle term the presumptive term except when circumstances in aggravation justify imposition of the upper term and "the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1) & (2), as amended by Sen. Bill No. 567 (2021–2022 Reg. Sess.); Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.) Second, if any of certain specified circumstances was "a contributing factor in the commission of the offense," the court must impose the lower term unless the court finds aggravating circumstances outweigh the mitigating circumstances such that imposition of the lower term

would be contrary to the interests of justice.  (§ 1170, subd. (b)(6), added by Sen. Bill No. 567.)

    B.    *Analysis*

    We agree with the parties that appellant, whose judgment is not yet final, is entitled to retroactive application of the ameliorative changes to section 1170 that took effect pursuant to Senate Bill No. 567 on January 1, 2022.  (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039 ["The People correctly concede the amended version of section 1170, subdivision (b) that became effective on January 1, 2022, applies retroactively in this case as an ameliorative change in the law applicable to all nonfinal convictions on appeal"].)

    Appellant's upper term sentence on his base term sentence is inconsistent with the amendments to section 1170, subdivision (b) because there is no indication in the record that the aggravating circumstances were proved to the court beyond a reasonable doubt, admitted by appellant, or were circumstances relating to appellant's prior convictions based on a certified record of convictions.  (§ 1170, subd. (b)(1), (2) & (3).)  In addition, based on the newly added provisions in section 1170, subdivision (b)(6), appellant's counsel may be able to argue different factors in mitigation that would require imposition of the lower term, not just on the base term enhancement but on each subsequent firearm sentencing enhancement.

    Remand is therefore appropriate in this case to permit the trial court to resentence appellant in accordance with Senate Bill No. 567's amendments to section 1170.  (*People v. Jones* (2022) 79 Cal.App.5th 37, 45 (*Jones*).)

On remand, the trial court must fully resentence appellant on all counts in accordance with the full resentencing rule described by our Supreme Court in *People v. Buycks* (2018) 5 Cal.5th 857 (*Buycks*). The full resentencing rule directs that "when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.'" (*Buycks, supra,* at p. 893.) "As more commonly applied, the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant." (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 (*Valenzuela*); *Buycks,* at p. 893.) This includes "revisiting such decisions as the selection of a principal term, whether to stay a sentence, whether to impose an upper, middle, or lower term, and whether to impose concurrent or consecutive sentences." (*Jones, supra,* 79 Cal.App.5th at p. 46; *Valenzuela, supra,* at p. 425.)

## V.  Corrections

Finally, appellant points out a number of apparent typographical errors made in the recording of the sentence and related fees orally imposed by the trial court. However, because we vacate appellant's sentence and remand for resentencing, any errors in the now-inoperative original sentencing documents are rendered moot. (*People v. Rojas* (2015) 237 Cal.App.4th 1298, 1301–1302 [appellant's contention of sentencing errors mooted when the matter is remanded for resentencing].)

## DISPOSITION

The implied true findings on the firearm enhancements (§ 12022.5, subd. (a)) are vacated. The sentence is vacated, and the case is remanded. On remand, the trial court will resentence appellant in accordance with section 1170, subdivision (b), as

amended by Senate Bill No. 567, and with the full resentencing rule as set forth in *Buycks, supra,* 5 Cal.5th 857. After resentencing, the clerk of the court shall prepare an amended abstract of judgment to reflect the new sentence and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

18